**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

JULIAN GREEN,

Plaintiff,

v. Case No. 2:19-cv-00884

COURTLAND BRINER, RUSSELL COOK,
and RICHARD MCKEEN,[1] Correctional Officers,

Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is Defendants' Motion for Summary Judgment (ECF No. 54).

## SUMMARY OF MATERIAL FACTS[2]

Around 8:45 p.m. on September 9, 2017, while incarcerated on the C-2 Segregation Unit at the Northern Correctional Center ("NCC"), Plaintiff requested mental health

---

[1] According to Defendants' motion documents, these are the correct spellings of the full names of the three remaining defendants. The Clerk is directed to modify the docket sheet accordingly.

[2] These facts are derived from the affidavits, incident reports, and video evidence offered by the Defendants and testimony from Plaintiff's depositions and his written discovery responses, all of which are attached as exhibits to their motion. (ECF No. 54). Plaintiff principally relies on the naked allegations contained in his unverified Complaint and the video evidence. (*See, e.g.*, ECF No. 54, Ex. 1; Ex. 2 at 44-48; Ex. 3 at 23, 30-31). His Response to the Motion for Summary Judgment is largely repetitive of the allegations in the Complaint and further speculates that Defendants' incident reports and video evidence are incomplete, without providing affirmative evidence to dispute the same. (ECF No. 57).

assistance.[3] Corporal Russell Cook ("Cook"), a defendant herein, was assigned to the C-2 Segregation Unit. Cook notified the medical unit and Sergeant Richard McKeen ("McKeen"), who is also a defendant herein, of Plaintiff's mental health issues. Cook's affidavit and incident report indicate that Plaintiff stated that he was suicidal; Plaintiff denies making such a statement, but acknowledges that he requested to see a mental health therapist for "personal issues." (ECF No. 54, Ex. 3 at 13-14; Ex. 6; and Ex. 9, ¶ 3).

Plaintiff was placed in handcuffs and leg shackles by Cook and Correctional Officer II Jesse Blacker (who is not a defendant herein), who then escorted him to the medical unit. (ECF No. 54, Ex. 6). As seen on video footage produced by Defendants, while walking through the C-2 dayroom, Plaintiff fell to the floor. Plaintiff claims that he was knocked to the ground by Cook. (ECF No. 1-1 at 3, ¶ 10; ECF No. 54, Ex. 3 at 10). Defendants, on the other hand, maintain that Plaintiff began to resist and lean backwards, falling to the ground using his own dead weight, and continually refused orders to stand upright. (ECF No. 54, Exs. 6, 7, and 9, ¶¶ 6, 7). Cook denies knocking Plaintiff to the ground or "forcibly manhandling" him. (ECF No. 54, Ex. 9, ¶ 8).

As further demonstrated by the video evidence, Plaintiff was lifted from the ground and taken into the hallway, where the struggle continued, and Plaintiff was ultimately placed on his stomach until a restraint chair was retrieved. (ECF No. 54, Exs. 6, 8, and 9, ¶¶ 9, 10). Plaintiff's Complaint alleges that, while he was laying on the ground, Defendant Courtland Briner ("Briner") yelled, "bust his f*ing head open!" (ECF No. 1-1 at 3, ¶ 10). Plaintiff further asserts that Briner used an "unnecessary and excessive" chokehold while

[3] Defendants' memorandum of law also discusses Plaintiff's alleged involvement in a fight with another inmate on the recreation yard approximately two hours before his request for mental health assistance. (ECF No. 55 at 5). Plaintiff denies his involvement in this alleged altercation on the recreation yard (ECF No. 54, Ex. 2 at 38-39), and Defendants have not specifically demonstrated its materiality to this case.

placing him in the restraint chair. (*Id.*) However, the video and other evidence offered by Defendants does not support these allegations and Plaintiff has offered no other affirmative evidence to contradict Defendants' evidence. In fact, although there is no sound on the video, during Plaintiff's second deposition session, Plaintiff denied that the officers who placed him in the restraining chair in the hallway said anything to him. (ECF No. 54, Ex. 3 at 12).

Video evidence produced by Defendants further demonstrates that, when Plaintiff arrived at the medical unit, he was evaluated by a nurse and then released to a cell therein. (ECF No. 54, Ex. 10). According to Defendant McKeen's affidavit and incident report, McKeen, who was then serving as the Operations Officer, was notified that Plaintiff was suicidal and had been placed in a medical unit cell on constant watch. (*Id.*, Ex. 11, ¶¶ 3, 4).

Defendants assert that multiple attempts were made by McKeen and Unit Manager Ryan Adams to get Plaintiff to comply with orders to submit to a strip search, but Plaintiff refused to comply. (*Id.*, Ex. 11, ¶¶ 4, 5 and Ex. 12). Although, during his deposition, Plaintiff stated that he did not recall anyone ordering him to submit to a strip search, his Complaint and his Response to the Motion for Summary Judgment both acknowledge that he did not want to submit to a strip search upon being placed in that cell and did not believe it was necessary. (ECF No. 1-1 at 4, ¶ 11; ECF No. 54, Ex. 3 at 15-17; ECF No. 57 at 1).

Subsequently, Administrative Duty Officer Joanie Hill, who is not a defendant herein, directed that Plaintiff be extracted from the medical unit cell and placed back in the restraint chair to prevent him from harming himself. (ECF No. 54, Ex. 11, ¶¶ 7, 8). An extraction team was assembled, with McKeen serving as the Tactical Commander. (*Id.*,

Ex. 11, ¶ 9; Ex. 12). However, when the extraction team entered the medical unit and approached his cell, Plaintiff complied with a command to cuff up and was placed back into the restraint chair and held inside the same medical unit cell. (*Id.*, Ex. 12).

Plaintiff contends that, while being placed in the restraint chair the second time, McKeen applied an "unnecessary and excessive" choking maneuver on him, and he further contends that handcuffs placed on him by Cook were too tight. (ECF No. 1-1 at 4, ¶ 11; ECF No. 54, Ex. 2 at 53-54). McKeen's incident report acknowledges that he applied a "mandibular angle to control [Plaintiff's] head," but he denies that Plaintiff was "forcibly manhandled" or that any "choking maneuver" was used and there is no video evidence to support Plaintiff's claim. (ECF No. 54, Ex. 11, ¶¶ 10, 11 and Ex. 12).

After Plaintiff was placed in the restraint chair the second time, a handheld camera was set up outside his cell, which recorded video and audio over the course of approximately two hours. Plaintiff alleges that, during this second period in the restraint chair, Defendants ignored his repeated complaints that his handcuffs were too tight and that his requests to use the bathroom until he was forced to urinate on himself. However, the evidence of record does not demonstrate the presence of Cook, Briner, or McKeen during that time period, or their specific involvement in those actions, and Plaintiff has offered no affirmative evidence to dispute that fact.

Rather, the video and documentary evidence of record shows nurses and correctional staff other than Defendants, responding to Plaintiff's complaints about his handcuffs on several occasions and ascertaining that they could fit two fingers between the cuffs and Plaintiff's wrists. (ECF. No. 54, Exs. 13-16). The video and documentary evidence submitted by Defendants also demonstrates that nurses repeatedly checked Plaintiff's vital signs and gave him medication when he made repeated complaints about

chest pain and pain and numbness in his left arm. (ECF No. 54, Exs. 13-17). A restraint chair log demonstrates that Plaintiff was checked by medical staff approximately every twenty minutes over the two-hour period that he was in the chair. (*Id.*, Ex. 17).

The video evidence also demonstrates that Plaintiff repeatedly advised staff that he needed to use the restroom, but he was not released to do so until authorized by a supervisory correctional officer, Lt. Foster, who is not a defendant herein. (*Id.*, Exs. 13-16). The video evidence also demonstrates that, during that time, Plaintiff urinated on himself. (*Id.*, Ex. 15). However, shortly thereafter, he was released from the chair and given a shower before being placed back into the medical unit cell, unrestrained, but still on suicide watch. (*Id.*)

Plaintiff contends that he has been seen by doctors in Beckley, WV and Wheeling, WV, where he had x-rays taken that allegedly demonstrate that a screw placed in his hand from a previous injury when he was 16 years old is bent, and that he was advised that he will need surgery to repair or remove it. However, he has not produced any testimony or documentary evidence to support his claims of physical or emotional injury, and he acknowledges that no such surgery is currently scheduled. (ECF No. 54, Ex. 3 at 38-40, 52-53).

## STANDARD OF REVIEW

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (2010). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim. *Celotex,* 477 U.S. at 322-23. The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

Once the moving party demonstrates such a lack of evidence, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). "A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements." *Brown v. Showboat Altantic City Propoco, LLC*, No. 08-5145, 2010 WL 5237855, *2 (D.N.J. Dec. 16, 2010) (citing *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Rather, "the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Id.* (citing *Anderson*, 477 U.S. at 256-57). Accordingly, summary judgment will generally be granted unless a reasonable jury could render a verdict for the non-moving party on the evidence presented. *Anderson,* 477 U.S. at 247-48.

A court must not resolve disputed facts or weigh the evidence and may not make determinations of credibility. *Russell v. Microdyne Corp., 65 F .3d* 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . .

must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). However, the party opposing the motion may not rely upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Sprenkle v. Hartford Life Ins. Co.,* 84 F. Supp.2d 751 (N.D.W. Va. 2000).

## ANALYSIS

Plaintiff's Complaint alleges violations of his rights under the Eighth Amendment and a state law claim of intentional infliction of emotional distress against Defendants Cook, Briner, and McKeen. Specifically, Plaintiff claims that Defendants used excessive force against him "by knocking him to the ground, unnecessarily using a choke hold, and unnecessarily placing [him] in a restraint chair." (ECF No. 1-1 at 3-4, ¶¶ 10-11, 13). He further contends that "the defendants' wrongful conduct and malicious nature of the acts were further indicated when defendants forced plaintiff to remain in the restraint chair until he urinated on himself [and] further ignored [his] pleas to be released to use the bathroom." (*Id.* at 4, ¶ 14). Defendants assert, however, that Plaintiff has presented no evidence, beyond his own self-serving and unsupported allegations, to demonstrate the essential elements of his federal and state law claims and that they are, therefore, entitled to judgment as a matter of law on those claims. The undersigned will address each claim in turn.

### A. Defendants are entitled to judgment as a matter of law on Plaintiff's claim of intentional infliction of emotional distress.

In Count I of his Complaint, Plaintiff contends that Defendants' alleged conduct amounted to the intentional infliction of emotional distress ("IIED"). West Virginia law

recognizes such a tort, which is also known as the "tort of outrage." To prevail on an IIED claim under West Virginia law, a plaintiff must show:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Miller v. Rubenstein*, No. 2:16-cv-05637, 2018 WL 736044, at *16-17 (S.D.W. Va. Feb. 6, 2018). These elements present a high bar to recovery. *See Courtney v. Courtney*, 413 S.E.2d 418, 423 (W. Va. 1991) ("conduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct.").

Plaintiff's Complaint contends that Defendants, knowing that he was seeking mental health assistance, physically assaulted him, verbally taunted him, and placed him in a restraint chair, all without cause, and would not allow him to use the bathroom for the duration of that time. (ECF No. 1-1 at 5, ¶ 18). However, beyond his own speculation concerning Defendants' intent, Plaintiff has not presented any evidence to create a material dispute of fact as to the elements of an IIED claim. He has offered no corroborating testimony or medical documentation of his alleged emotional injuries and he has failed to demonstrate that any emotional distress he allegedly suffered from these events was so severe that no reasonable person could be expected to endure it. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law on Count I of Plaintiff's Complaint.

**B. Defendants are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claims.**

In Count II of his Complaint, Plaintiff alleges that Defendants' conduct violated his rights under the Eighth Amendment of the United States Constitution, which prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII. He contends that Defendants used excessive force against him and engaged in conduct that was unnecessary and unjustified. (ECF No. 1-1 at 6, ¶¶ 22, 23).

In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" This is a low standard. The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.* at 833.

"An inmate's Eighth Amendment claim involves a subjective component and an objective component." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008); *see also Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) ("Determination of whether the Eighth Amendment has been violated requires analysis of subjective and objective components.") (citing *Wilson v. Seiter*, 501 U.S. 294, 302 (1991))). "Specifically, Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams*, 77 F.3d at 761.

In *Hudson v. McMillan*, 503 U.S. 1 (1992), the Supreme Court held that use of excessive physical force against an inmate may constitute cruel and unusual punishment

even when the inmate does not suffer serious injury. "The objective component focuses not on the severity of any injuries inflicted, but rather on 'the nature of the force' which must be 'nontrivial.'" *Tedder v. Johnson*, 527 F. App'x 269, 272 (4th Cir. 2013) (quoting *Wilkins v. Gaddy*, 559 U.S. 34 (2010)). Under the subjective component, "the state of mind required in excessive force claims is 'wantonness in the infliction of pain.'" *Iko*, 535 F.3d at 239 (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). It is well-settled that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillan*, 503 U.S. 1, 5 (1992). However, the Supreme Court has found that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." (*Id.*, citing *Hudson,* 503 U.S. at 9 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Turning to the subjective component, the Court held "that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 6. The *Whitley* Court noted that:

> [I]n making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison staff, in addition to the possible harms to inmates against whom force might be used.

475 U.S. at 320. The Supreme Court has further emphasized that, "prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline

and to maintain institutional security." *Id.* at 321-22 (quoting *Bell v. Wolfish*, 441 U.S. at 547).

Thus, the Court stated that "[u]nless it appears that the evidence viewed in the light most favorable to the plaintiff will support a reliable inference of wantonness in the infliction of pain, under the standard we have described, the case should not go to the jury." *Id.* at 322. In order to determine whether a particular use of force was excessive, the court must determine "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). A reviewing court should not weigh the reasonableness of the officer's conduct with "20/20 hindsight" but must judge the conduct "from the perspective of a reasonable officer on the scene."

As noted above, at the summary judgment stage, the facts must be viewed in the light most favorable to the non-moving party, which, in this case, is Plaintiff. However, in *Scott v. Harris*, 550 U.S. 372, 380 (2007), the Supreme Court held that, where evidence exists that so utterly discredits the plaintiff's version of the facts, there can be no "genuine" issue of material fact, and the court should not adopt the contradicted version of the facts for the purposes of ruling on a summary judgment motion. Here, Defendants assert that the video evidence produced with their motion clearly contradicts Plaintiff's version of the facts and demonstrates that the force used against him was reasonable under the circumstances.

Defendants contend that any force used against Plaintiff was used in a good faith effort to gain his compliance and to restore order and discipline to the unit. With respect to Plaintiff's claim that Defendant Cook pushed him to the ground in the C-2 dayroom,

the video footage in the record clearly contradicts that assertion. (ECF No. 54, Ex. 7). Moreover, the conduct of the correctional officers, as depicted in the video footage of Plaintiff being taken into the hallway and his initial placement in the restraint chair (ECF No. 54, Ex. 8), as further supported by Cook's affidavit (*id.*, Ex. 9), is insufficient to demonstrate the unnecessary and wanton infliction of pain, which is necessary to satisfy the subjective component of an Eighth Amendment violation, and Plaintiff has produced no admissible evidence to contradict the video and documentary evidence of record. Rather, he relies solely on his own self-serving and unsupported allegations, which are insufficient to create a genuine issue for trial.

Thus, the undersigned proposes that the presiding District Judge **FIND** that there is no genuine issue of material fact and that such force was reasonable under the circumstances and does not demonstrate a violation of Plaintiff's Eighth Amendment rights. Accordingly, the undersigned further proposes that that the presiding District Judge **FIND** that Defendants are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claims against Cook and Briner concerning any force used against him in the C-2 unit or the hallway leading up to and including his initial placement in the restraint chair.

Plaintiff further contends that it was unnecessary to place him back into the restraint chair in the medical unit because he was being compliant, and he further contends that Defendant McKeen unreasonably used a "chokehold maneuver" on him as he was placed in the chair. He further contends that, while in the restraint chair, Defendants unreasonably ignored his complaints about the tightness of his handcuffs and his requests to use the restroom.

The undisputed video evidence, which includes footage of Plaintiff being placed back into the restraint chair in the medical unit,[4] fails to demonstrate any chokehold maneuver being used and there is no other affirmative evidence of the use of excessive force during that process. Moreover, despite his claim that he was not suicidal, Defendants contend that Plaintiff's second placement in the restraint chair was reasonable due to his failure to comply with orders for a strip search to prevent the threat of him harming himself. Furthermore, placement in a restraint chair for approximately two hours is not per se unreasonable. *See, e.g., Cunningham v. Eyman*, 17 F. App'x 449 (7th Cir. 2001) (finding that 16 hours in shackles, with 4-5 hours spent in soiled clothing was not unconstitutional); *Holley v. Johnson*, No. 7:08-cv-00629, 2010 WL 2640328 at *14 (W.D. Va. June 30, 2010) (finding that application of ambulatory restraints for 48 hours is not force that offends contemporary standards of decency so as to satisfy the objective component of an excessive force claim); *Sadler v. Young*, 325 F. Supp.2d 689, 700-704 (W.D. Va. 2004) (finding that placing inmate in five-point restraints for 47 hours with only brief breaks did not violate Eighth Amendment).

Additionally, the undisputed evidence demonstrates that Plaintiff was frequently checked by medical staff and that his complaints concerning the tightness of the handcuffs were responded to by medical staff and others. Other than offering his own opinion that such efforts were insufficient, Plaintiff fails to demonstrate that such conduct

[4] As noted in a separate Order, based upon an incident report prepared by Unit Manager Ryan Adams, who was charged with video recording the cell extraction and Plaintiff's second period in the restraint chair in the medical unit, a portion of video footage during the cell extraction process failed to record. Plaintiff wholly speculates that Defendants' alleged wrongful conduct occurred during the period that was not captured on video. (ECF No. 57 at 3). However, it appears that the entirety of Plaintiff's removal from the cell and his second placement in the restraint chair was captured on video from a stationary camera in the medical unit. Plaintiff has failed to produce any evidence to contradict the available video and documentary evidence produced by Defendants. Therefore, he fails to overcome Defendants' assertion that there is an absence of evidence to support his claims.

was objectively unreasonable or done with malicious intent or wantonness in the infliction of pain. Moreover, Plaintiff fails to demonstrate that Defendants Cook, Briner, or McKeen were involved in or responsible for the decision to keep him in the restraint chair when he requested to use the restroom. Instead, the evidence presented by Defendants suggests that a non-defendant, Lt. Foster, was the person ultimately responsible for that decision.

Based upon the evidence of record, the undersigned proposes that the presiding District Judge **FIND** that there is an absence of evidence to establish a violation of Plaintiff's Eighth Amendment rights by these Defendants. Thus, the undersigned further proposes that the presiding District Judge **FIND** that there is no genuine issue of material fact and and that Defendants are entitled to judgment as a matter of law on all of Plaintiff's Eighth Amendment claim.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Defendants' Motion for Summary Judgment (ECF No. 54) and dismiss this matter from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of

such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff, and to transmit a copy to counsel of record.

July 8, 2021

Dwane L. Tinsley
United States Magistrate Judge